FILED
SUPERIOR COURT
OF GUAM

2024 JUN 10 PH 4:34

CLERK OF COURT

BY:_____ SM

**IN THE SUPERIOR COURT OF GUAM**

| | |
|---|---|
| HEE K. CHO and MIN S. CHO,<br><br>Plaintiffs,<br><br>v.<br><br>ALUPANG BEACH CLUB, INC. and STEVEN KASPERBAUER,<br><br>Defendants. | CIVIL CASE NO. CV 1059-17<br><br><br>**DECISION AND ORDER**<br>*Re: Defendants' Motion for Award of Attorneys' Fees and Expenses* |

This matter came before the Honorable Arthur R. Barcinas on March 12, 2024, for a hearing on Defendants Alupang Beach Club, Inc. and Steven Kasperbauer's (collectively, "Defendants") Motion for Award of Attorney's Fees and Expenses ("Motion for Fees"), filed on June 23, 2023. Plaintiffs Hee K. Cho and Min S. Cho (collectively, "Plaintiffs") were represented by Attorney William Mann. Defendants were represented by Attorney Mitchell Thompson, with Defendant Kasperbauer present. After reviewing the pleadings and oral arguments, for the reasons set forth below, the Court hereby **GRANTS** in part the Motion for Fees.

## BACKGROUND

This matter arises from a Complaint filed by Plaintiffs on October 9, 2017. On August 2, 2018, the Court issued a Decision and Order denying Defendants' first Motion for Summary

Judgment Based on Anti-SLAPP Statute, on the grounds that the differences between the Replacement Horizontal Property Regime ("HPR") and the Amended HPR were not sufficiently material to sustain a claim for CPGA relief. On August 7, 2018, the Defendants appealed the Court's Decision and Order and filed a Notice of Appeal with the Supreme Court of Guam.

On May 28, 2020, the Supreme Court of Guam issued an Order affirming the trial court's decision that summary judgment under the CPGA was not appropriate because the scope and applicability of the parties' Settlement Agreement and Mutual Release ("SAMR") to the Amended HPR was unclear, and that the parties should therefore have the opportunity to flesh out those issues on the merits. *Cho v. ABC, Inc.* 2020 Guam 10 ¶ 17.

On March 15, 2022, Defendants' filed the Second Motion for Summary Judgment ("Second MSJ"), sans all claims pursuant to the CPGA. Defendants argued that: (1) Plaintiffs lack standing to seek restitution of the settlement consideration because they did not pay the consideration in the first place; (2) even if the Court finds Plaintiffs have standing, courts are unwilling to find waiver of the right to petition in circumstances which fall short of being clear and compelling; and (3) ABC did not "clearly, compelling and unambiguously" waive its right to participate in all GLUC proceedings in perpetuity.

On May 16, 2023, the Court granted summary judgment in favor of Defendants, finding that the Court lacked subject-matter jurisdiction because Plaintiffs had demonstrated no injury-in-fact regarding their claim for monetary damages and therefore had no standing on that issue. On June 9, 2023, the Court entered its Judgment dismissing the case with prejudice.

On June 23, 2023, Defendants filed the Motion for Fees, arguing for reasonable fees on the grounds that section 5.6 of the SAMR contains an express provision for the award of attorneys' fees to the prevailing party in the event of any dispute concerning the terms of the

SAMR or any of the settlement documents executed by the parties thereto. Defendants requested an attorneys' fee award of $97,577.50, as well as an additional sum of $7,345.04 for computer research expenses and $1,810.50 for other litigation expenses. On February 23, 2024, Plaintiffs filed their opposition to the Motion for Fees, arguing that a court without subject-matter jurisdiction does not have authority to consider a defendant's attorneys' fees motion; and that if the Court maintains that it has subject-matter jurisdiction, the requested fees and expenses should be reduced to reflect Defendants' lack of success on their allegedly unrelated anti-SLAPP Motion before the Court and the Supreme Court. On February 26, 2024, Defendants filed their reply, arguing that the Court had not granted summary judgment on Plaintiffs' claim for injunctive relief; that the Court's dismissal is based on prudential standing, not constitutional standing, and is therefore not jurisdictional; that Defendants' defenses were not unrelated to the anti-SLAPP Motion; that where there is a contractual attorneys' fee provision, Guam law should take precedence over federal law in awarding fees; and that ABC is entitled to additional fees incurred since its initial motion.

On March 12, 2024, the Court heard arguments from both parties and took the matter under advisement.

## DISCUSSION

Guam follows the American rule for attorney's fees in civil cases. *Fleming v. Quigley*, 2003 Guam 4 ¶ 13. The American rule dictates that each party generally bears its own expenses of litigation, including attorney's fees. *Id.* ¶ 7. However, Guam recognizes the exception that attorney's fees are allowed where they are provided for by statute, contract, or under equitable circumstances. *Mobil Oil Guam, Inc. v. Tendido*, 2004 Guam 7 ¶¶ 43-49 (upholding a contractual provision providing that attorney's fees were recoverable in the case of one party

having to enforce the contract); *Quigley*, 2003 Guam 4 ¶ 20. Contractual provisions providing for the allowance of attorney's fees to the winning party are construed to include fees incurred both at the trial level and on appeal. *Tendido,* 2004 Guam 7 ¶ 49. Absent specific statutory or contractual language to the contrary, the term "costs" does not include attorney's fees. *Sule v. Guam Bd. of Dental Examiners*, 2008 Guam 20 ¶ 53. Generally, a court abuses its discretion if it awards contractually-authorized attorney's fees under circumstances that make the award inequitable or unreasonable, or fails to award such fees in a situation where inequity will not result. *Rahmani v. Park*, 2011 Guam 7 ¶ 63.

The Guam Supreme Court has held that, where there is a contractual provision for attorney's fees, a court is not required to rely on a statutory provision for attorney's fees. *Fargo Pacific, Inc. v. Korando Corp.,* 2006 Guam 22 ¶ 51. Section 5.6 of the SAMR explicitly states that "[i]n the event that any dispute arises concerning the terms of [the SAMR] or any of the Settlement Documents executed by the parties, the prevailing party shall be entitled to recover attorneys' fees from the non-prevailing party." Generally, for the purpose of determining entitlement to attorney's fees, the prevailing party to a suit is the one who successfully prosecutes the action or successfully defends against it, prevailing on the merits of the main issue. *Rahmani*, 2011 Guam 7 ¶ 61. Accordingly, the Court finds that, barring the below issues, Defendants would ordinarily be entitled to recover attorney's fees and costs.

1. *The Court's dismissal of the damages claim did not divest the Court of subject-matter jurisdiction over this case.*

The primary issue before the Court is whether the Court has subject matter jurisdiction to award attorney's fees where an underlying issue has been dismissed for lack of subject matter jurisdiction. "If a plaintiff fails to establish standing, a court has no jurisdiction to hear the

case." *Fernandez v. 23676-23726 Malibu Road, LLC*, 74 F.4th 1061, 1064 (9th Cir. 2023). The Ninth Circuit holds that a court that lacks jurisdiction at the outset of a case lacks the authority to award attorneys' fees, but an exception to the rule exists "where the statute under which a party seeks attorney's fees contains an independent grant of jurisdiction." *Id.*

Plaintiffs argue that the Court, having dismissed their monetary damages claim for lack of standing, no longer has subject-matter jurisdiction to award attorney's fees and must therefore dismiss the Defendants' Motion for Fees. Plaintiffs first cite to the Guam Supreme Court's decision in *DFS Guam L.P. v. A.B. Won Pat Int'l Airport Auth.*, 2014 Guam 12, arguing that the Supreme Court held that "[w]ithout jurisdiction the court cannot proceed at all in any cause. Jurisdiction is the power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." Plaintiffs further cite to *Willow Farms, LLC v. AWCC WCW Holdings, LLC*, 2016 WL 4150749 (D. Or. 2016), in which the Oregon federal court held that where a district court lacks jurisdiction over the underlying suit, it has no authority to award attorneys' fees. *Id.* at *1.

The Court finds that it is not necessary to determine whether it has subject-matter jurisdiction to award attorney's fees, because the Court is not divested of its subject-matter jurisdiction over this case as a whole. While the Court may have dismissed Plaintiffs' monetary damages claim - what Plaintiffs referred to as their "secondary claim" - for lack of standing, it did not dismiss Plaintiffs' primary injunctive relief claim on that basis because Plaintiffs had effectively abandoned that claim by not properly addressing it in their opposition. Indeed, Plaintiffs continued to argue that their injunctive relief claim was active until the Court issued its January 23, 2024 Decision and Order denying Plaintiffs' Motion to Amend or Vacate Judgment. Because the Court did not rule in either its May 16, 2023 decision or its January 23,

2024 decision that the injunctive relief claim lacked standing, the Court finds that it maintains subject-matter jurisdiction over the injunctive relief claim, even if only to determine whether said claim was still active.

Because the Court is not divested of subject-matter jurisdiction over this matter, the Court finds that it has jurisdiction to consider Defendants' Motion for Fees. The Court further finds that Defendants successfully defended themselves against Plaintiffs' action, and prevailed on the merits of the main issue, that issue being, by Plaintiffs' own statement, the injunctive relief claim.

Accordingly, based on the parties' pleadings and arguments, the Court **GRANTS** the Defendants' Motion for Fees.

2. *Constitutional standing is a prerequisite to pursuing relief in all cases.*

Injunctive relief claim notwithstanding, Defendants also argue that the Court's finding of lack of standing in its May 16, 2023 decision was more consistent with the concerns that make up prudential standing, not constitutional standing, and that therefore Plaintiffs' reliance on constitutional standing issues and jurisdiction is not pertinent. The Court does not agree.

In *In re A.B. Won Pat Int'l Airport Auth., Guam*, 2019 Guam 6, the Guam Supreme Court formally adopted the doctrine of prudential standing as established in *Lexmark Int'l, Inc. V. Static Control Components, Inc.*, 572 U.S. 118 (2014). The Supreme Court distinguished prudential standing from constitutional standing and held that, under *Lexmark*, "considerations traditionally understood under the rubric of prudential standing are not jurisdictional in nature."

However, the Supreme Court also held in that case that "[c]onstitutional standing is a necessary prerequisite to pursuing relief in *all* cases filed in the courts of Guam, and the legislature cannot remove the requirement of constitutional standing by statute." *DFS*, 2019

Guam 6 ¶ 18 (emphasis original). Further, the Supreme Court only explored the applicability of prudential standing in that case after already determining that constitutional standing existed. While the Supreme Court may have distinguished prudential standing from constitutional standing, it did not establish that prudential standing may be used as a replacement for constitutional standing; merely that the doctrine of prudential standing allows a court to "refuse to adjudicate some claims even where the constitutional standing requirements had been satisfied." *Id.* ¶ 26. Therefore, Defendant's argument that the Court should consider prudential standing as the standard for the damages claim rather than constitutional standing is procedurally impossible.

### 1. *Determination of Attorney's Fees Amount*

In the Motion for Fees, Defendants request that the Court award Defendant ABC an attorneys' fee award of $97,577.50, which allegedly represents 385.85 hours of professional services, at the hourly rate of $250 before January 2023, and $300 beginning January 2023. Defendants further request that the Court award an additional sum of $7,345.04 for the computer research expenses reasonably incurred in this case, as well as $1,810.50 for other litigation expenses.

### A. Whether attorney's fees should include the unsuccessful anti-SLAPP appeal

Plaintiffs claim that Defendants' requested attorneys' fees must be reduced to reflect their lack of success on their anti-SLAPP claim, arguing that "work on an unsuccessful claim cannot be deemed to have been expended in pursuit of the ultimate result achieved." Opp., at 4 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, at 434-435 (1983). Plaintiffs state that, out of Defendants' $97,577.50 in claimed attorneys' fees, $65,792.50 of that amount was spend on Defendant's unsuccessful anti-SLAPP Motion. Plaintiffs further state that the *Hensley* finding

was applied to *Schwarz v. Secretary of Health & Human Servs.*, 73 F.3d 895 (9th Cir. 1995), which they argue bears similar circumstances to the instant case. In *Schwarz*, the plaintiff prevailed on only one of five claims, with the remainder eliminated by summary judgment, and the Ninth Circuit held that "[w]e may award fees for work done on a successful appeal of a district court's award, but not for an unsuccessful one." 73 F.3d at 909.

Following *Hensley*, the *Schwarz* court stated that "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Id*, at 901 (quoting *Hensley*, 461 U.S. at 433). But a court has discretion to make a downward adjustment to the components or the product of this initial equation, known as the lodestar, for the results obtained in the litigation. *Id.* The results of the litigation are a crucial factor where a plaintiff is deemed to prevail, even if they only succeed on some of their claims for relief. *Id.* "Where the plaintiff succeeds on only some of their claims," the court must determine whether the successful and unsuccessful claims are "distinctly different claims for relief that are based on different facts and legal theories" or whether they "involve a common core of facts or are based on related legal theories." *Id.* If the claims are distinctly different, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee, because "work on such an unsuccessful claim cannot be deemed to have been expended in pursuit of the ultimate result achieved." *Id.* (quoting *Hensley*, 461 U.S. at 435). However, if the claims are related, the trial court "should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation," and "a plaintiff who has won substantial relief should not have their attorney's fee reduced simply because the [trial] court did not adopt each contention raised." *Id.* (quoting *Hensley*, 461 U.S. at 440). "If the plaintiff obtained excellent

results, full compensation may be appropriate, but if only partial or limited success was obtained, full compensation may be excessive. Such decisions are within the [trial] court's discretion." *Id.* (quotation omitted).

Relying on the test established by *Hensley* and *Schwarz*, the Court finds that Defendants' unsuccessful claims and successful claim bear a common core of facts and are therefore related under the *Hensley* test. The Ninth Circuit has held that a commonality of both facts and law are not required to conclude that unsuccessful and successful claims are related; the Court merely needs to find one or the other. *Webb v. Sloan*, 330 F.3d 1158, 1168 (9th Cir. 2003). *Schwarz* also dictates that the focus in the commonality test is "to be on whether the unsuccessful and successful claims arose out of the same 'course of conduct.'" Because both claims arise from the same course of conduct and the same Complaint filed by Plaintiffs, a sufficient commonality of facts exists to find that the anti-SLAPP claim is related to Defendants' instant claims. Further, as stated above, contractual provisions providing for the allowance of attorneys' fees to the winning party are construed to include fees incurred both at the trial level and on appeal. *Tendido,* 2004 Guam 7 ¶ 49.

However, when determining whether an unsuccessful claim is compensable, the relation of the unsuccessful claims to the successful claims is only the first part of the analysis. *O'Neal v. City of Seattle*, 66 F.3d 1064, 1068-69 (9th Cir. 1995). "If the unsuccessful and successful claims are related, then the court must apply the second part of the analysis, in which the court evaluates the significance of the overall relief obtained by the [party] in relation to the hours reasonably expended. If the [party] obtained excellent results, full compensation may be appropriate, but if only partial or limited success was obtained, full compensation may be

excessive." *Id.* Because the case was completely dismissed in Defendants' favor, the Court finds that Defendants' counsel achieved excellent results and are entitled to full compensation.

### A. Whether the fees are reasonable

The Guam Supreme Court has agreed that, in determining a reasonable hourly rate, courts look to the prevailing rate in the community. *Matter of Guardianship of Moylan*, 2022 Guam 10 ¶ 46 (quoting SP0106-07. The Guam Supreme Court has found a $300 hourly rate reasonable, and agreed that a $300 hourly rate has been reasonable since at least 2015 by affirming the trial court's citation to *Gange v. Gov't of Guam*, CV1461-10, Decision and Order at 19 (July 22, 2015), which approved a $300 hourly rate, and *Palmer v. Mariana Stones Corp.*, CV0709-13, Decision and Order (Dec. 17, 2018), which approved hourly rates between $200 and $400. In determining the reasonableness of attorney's fees, fidelity to the exact amount billed is not required. *Moylan*, 2022 Guam 10 ¶ 43. The Court should seek to determine a "reasonable" award, not an award that mirrors any amount billed to Defendants. *Id.* ¶ 43. The Guam Supreme Court in *Moylan* agreed that, even where the record supported a billable rate of $250.00, a trial court's order granting attorney's fees at a $300 hourly rate was not erroneous. *Id.* ¶ 41. Even where the parties in *Moylan* disagreed as to how the Court derived the exact amount of attorney's fees, the Supreme Court found that immaterial so long as it did not appear that the trial court ordered an unreasonable amount given the facts and circumstances of the case. *Id.* ¶ 44.

Upon review of Defendants' supporting documentation in the Declaration of R. Todd Thompson, filed June 23, 2023, the Court finds that Defendants' requested fees of $97,577.50 are not unreasonable for a case spanning more than six years, nor are the $1,810.50 in related legal expenses. Accordingly, the Court will **GRANT** the Motion for Fees in part as it applies to

these two amounts. However, the Court will not award the $7,345.04 requested for computer research expenses, as the Ninth Circuit has held that "[n]either tradition nor statutory usage distinguishes computer-based legal research costs from attorney's fees," and reasonable charges for computer-based legal research may only be recovered as attorney's fees if separate billing for such expenses is the prevailing practice in the local community. *Trustees of Const. Industry and Laborers Health and Welfare Trust v. Redland Ins. Co.*, 460 F.3d 1253 (9th Cir. 2006) (citing *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 287 (1989)). Upon the Court's review, such separate billing is not the prevailing practice in the local legal community, as research charges are typically already accounted for in an attorney's hourly rate, and Defendants have not demonstrated that this is the prevailing practice. Therefore, the Court will **DENY** in part the Motion for Fees insofar as Defendants' computer research expenses, and the Court will hereby **AWARD** Defendants the total amount of $99,388.00.

## CONCLUSION

Based on the foregoing, the Court hereby **GRANTS** in part and **DENIES** in part Defendant's Motion for Attorney's Fees, and **AWARDS** Defendants the total amount of $99,388.00.

**IT IS SO ORDERED** this day of _____ JUN 1 0 2024 _____.


**HONORABLE ARTHUR R. BARCINAS**
**Judge, Superior Court of Guam**